# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHAEL G. COVINGTON,

        Petitioner,                      Case Number: 03-71518

v.                                          HONORABLE GERALD E. ROSEN

PAUL RENICO,

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Michael Gene Covington has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Riverside Correctional Facility in Ionia, Michigan, challenges his conviction for breaking and entering a building with the intent to commit larceny therein. For the reasons set forth below, the Court denies the petition.

### I. Facts

The Michigan Court of Appeals set forth the facts relevant to Petitioner's conviction as follows:

> This criminal prosecution occurred after Covington broke into and entered Wilson's Heating and Air Conditioning on the night of June 8-9, 1998. The prosecutor alleged that Covington stole a computer, money from a gum ball machine, and other miscellaneous items from the business including an employee's shirt and a bottle of Asti Spumante.
>
> At trial, there was considerable testimony about how the building appeared after the break-in. For instance, a door had been pried open breaking the

casing, glass from a broken window was scattered on the floor, a key cabinet had been damaged, there was blood on a table, and doors and file cabinets had been opened and their contents strewn about the business. David Parks, Wilson's owner, thought the damage to the door indicated that the person who broke into the business used that door to leave. Parks stated that his employees did not normally leave their file cabinets and desk drawers opened and he did not give anyone permission to enter the business or to take items from the business on the day in question. Neither Parks nor Dennis Ostrander, a Wilson employee, could recall any connection between Wilson and Covington; they did not know Covington and did not believe he had ever been a Wilson employee or client.

. . .

Kenneth Lucas, a fingerprint technician with the Lansing Police Department, explained the process of fingerprint identification and testified that he had to find eight or more corresponding points between a latent unknown print and an inked known print before he could determine that the latent print came from the same person who provided the inked print. Lucas also testified that he compared the latent fingerprints taken at the scene with Covington's fingerprint card. Some of the fingerprints taken from the crime scene were not identifiable, but he concluded that seven others belonged to Covington because each of these prints had at least twelve points of similarity between them.

Covington, slip op. at 1-2.

## II. Procedural History

Following a jury trial in Ingham County Circuit Court, Petitioner was convicted of breaking and entering a building with the intent to commit larceny therein. He was sentenced as a fourth habitual offender to twenty to thirty years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. Defendant was denied his Ams. V and XIV rights of due process where evidence of prior bad acts was introduced where the danger of unfair

prejudice substantially outweighed probative value, if any.

II. Defendant was deprived of his Ams. V and XIV rights of due process when the court denied his motion for a directed verdict.

III. Defendant was deprived of his Ams. V and XIV rights of due process when the court failed to charge included offenses.

IV. Defendant's sentence was disproportionate depriving him of his rights of due process under Ams. V and XIV and constituting excessive punishment under Am. VIII of the U.S. Constitution.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. People v. Covington, No. 219055 (Mich. Ct. App. Oct. 27, 2000).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals and a claim that his attorney was ineffective in failing to object to the admission of other acts evidence. The Michigan Supreme Court denied leave to appeal. People v. Covington, No. 118228 (Mich. Apr. 30, 2001).

Petitioner then filed a motion for relief from judgment in the trial court, presenting the following claims:

I. Defendant was deprived of his liberty without due process of law under Ams. V and XIV and the paralleling Mich. Const. 1963 where his sentence as a habitual fourth offender is invalid.

II. Defendant was denied his Am. VI right to effective assistance of counsel on the trial and appellate level where (1) his trial counsel failed to object to prior bad acts testimony; (2) appellate counsel's failure to raise all meritable issues.

The trial court denied the motion. People v. Covington, No. 98-73710 (Ingham

County Circuit Court March 14, 2002). Petitioner's application for leave to appeal in the Michigan Court of Appeals, which presented the same claims raised in the motion for relief from judgment, was denied. People v. Covington, No. 240288 (Mich. Ct. App. July 31, 2002). Petitioner claims that he filed an application for leave to appeal in the Michigan Supreme Court, but that the Michigan Supreme Court improperly filed his application in another of his cases which was pending before the Court. The Michigan Supreme Court informed Petitioner that it had no record of an application for leave to appeal from case number 240288 being filed in the court. See March 17, 2003 Letter from Inger Z. Meyer, Supreme Court Deputy Clerk.

Petitioner then filed the pending petition for a writ of habeas corpus in this Court, presenting the following claims:

I. Defendant was denied his due process where evidence of prior bad acts was introduced to the jury.

II. Defendant was deprived of his right of due process where the court denied motion for directed verdict.

III. Defendant was deprived of his right to due process of law when the court failed to charge lesser included offenses.

IV. Defendant's sentence was disproportionate depriving him of due process and constituting excessive punishment.

V. Petitioner was deprived of his liberty without due process of law where the prosecutor failed to file habitual offender notice charging him as a fourth habitual offender.

VI. Petitioner was denied his constitutional right to the effective assistance of trial and appellate counsel.

## III. Analysis

### A. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

5

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11.

With this standard in mind, the court proceeds to the merits of the petition for a

writ of habeas corpus.

## B. Admission of Other Acts Evidence

In his first claim for habeas corpus relief, Petitioner claims that the trial court violated his right to a fair trial when it admitted evidence of prior bad acts. Specifically, Petitioner objects to Officer Rios's testimony regarding Petitioner's fingerprints because the testimony implied that Petitioner had been arrested previously. After testifying that she took Covington's fingerprints on July 2, 1998, Officer Rios further testified as follows:

> Q: Did you put the writing and the typing and so forth on this [fingerprint card]? How does that happen?
>
> A: *All this typing is already on the computer from the past times Michael's been there,*[] and I just put the card through and X it on the computer and it types it in.
>
> Q: Everything is typed by the computer?
>
> A: It's typed by a typewriter. It's already in the computer.

Covington, slip op. at 2 (emphasis supplied by court of appeals).

Respondent argues that this claim is barred from habeas review because it is procedurally defaulted.

> The doctrine of procedural default provides:
>
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

7

Coleman v. Thompson, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30. If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. Rust, 17 F.3d at 161. If the

last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's claim is procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claim. *See* Coleman, 501 U.S. at 729-30. The last state court to address this claim, the Michigan Court of Appeals, held that the issue was not preserved for appellate review because Petitioner failed to object to the admission of this evidence at trial. Covington, slip op. at 6. Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default applies.

Therefore, this Court may not review Petitioner's claim unless he establishes cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he demonstrates that failure to consider this claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner alleges that his trial and appellate attorneys' ineffectiveness constitute "cause" to excuse his procedural default. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." Id., at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the

9

petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." Id. at 753-54 (internal citations omitted).

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

"[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." Mapes v. Coyle, 171 F.3d 408, 413 (6th Cir. 1999). Thus, to determine whether Petitioner received ineffective assistance of appellate counsel, this court must first examine the merits of Petitioner's ineffective assistance of trial counsel claim. If

10

Petitioner did receive ineffective assistance of trial counsel, "the questions then become whether appellate counsel was constitutionally ineffective for failing to raise those errors on appeal and, if so, whether the petitioner was prejudiced by counsel's unsatisfactory representation." Mapes, 171 F.3d at 413-14 (6th Cir. 1999).

The Court finds that trial counsel's failure to object to Officer Rios's testimony did not fall "outside the wide range of professionally competent assistance." Strickland, 466 at 689. The reference was brief and any implication that Petitioner had a prior criminal history was oblique and attenuated. Therefore, the Court finds that trial counsel was not ineffective in failing to object to this testimony, and that appellate counsel was not ineffective in failing to argue trial counsel's ineffectiveness in this respect. Accordingly, Petitioner has failed to establish cause to excuse his procedural default.

His claim that this testimony was improperly admitted is therefore barred unless failure to consider this claim will result in a fundamental miscarriage of justice. The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup v. Delo, 513 U.S. 298, 321 (1995). Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id.

Petitioner has not supported his allegations of constitutional error with new reliable evidence of actual innocence that was not presented to the trial court.

Accordingly, Petitioner's first habeas claim is procedurally barred.

## C. Denial of Motion for Direct Verdict

In his second claim for habeas relief, Petitioner argues that the trial court erred in denying his motion for directed verdict. Petitioner argues that the evidence presented was insufficient to sustain his conviction because it was based upon impermissible inferences.

In <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the <u>Jackson</u> standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); <u>West v. Seabold</u>, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> [T]he trial court in this case had to determine whether a rational jury could conclude that the prosecutor had proved beyond a reasonable doubt that (1) Covington broke into a building, (2) he entered the building, and (3) he intended to commit a larceny in the building when he committed the breaking and entering.[] However, these elements could be proved by

12

> circumstantial evidence and reasonable inferences that could be drawn from it.[]
>
> * * *
>
> Given that the review we must apply to the evidence is favorable to the prosecutor, we conclude that the evidence adduced at trial was sufficient to deny the motion for a directed verdict of acquittal. A reasonable jury could find that Covington was the person who perpetrated this crime because the police found his fingerprints on glass at the scene, he had never worked at Wilson, and no one could recall that he was a Wilson client. Accordingly, there was no other way to explain his fingerprints at the scene of the crime other than to conclude that he committed the crime. Having tied Covington to the crime, th rest of the elements are easy to discern from the evidence. The broken window and door show, in the most literal of ways, a breaking. The open desk drawers and the mess made with their contents demonstrate that Covington entered the building. The missing property is circumstantial evidence that Covington intended to commit a larceny at the time he broke into and entered the building. Consequently, the trial court did not err when it denied Covington's motion for directed verdict.

Covington, slip op. at 5-6.

The Court finds this well-reasoned disposition of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law. The Court of Appeals described the facts in light of the elements of the crime and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's factual findings a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of appeals' decision that all of the elements of the crime were satisfied did not "result[] in a decision that . . . involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### D. Jury Instructions

Petitioner claims that he is entitled to habeas corpus relief because the trial court erred in failing to instruct the jury on a variety of lesser included offenses.

While the failure to instruct on a lesser included offense can constitute constitutional error in a capital case, Beck v. Alabama, 447 U.S. 625, 638 (1980), the Supreme Court has specifically declined to decide whether such a requirement applies in non-capital cases. Id. n.14. Habeas relief may only be granted where a state court's decision is "contrary to or involved an unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d). Petitioner cannot show that the state court's failure to instruct on lesser included offenses was contrary to or an unreasonable application of Supreme Court precedent where Supreme Court precedent does not require a lesser included offense instruction in non-capital cases.

### E. Sentencing Claim

Petitioner claims that his sentence is unconstitutional because it is disproportionate to the offense committed.

There exists no constitutional right to strict proportionality in sentencing. Harmelin v. Michigan, 501 U.S. 957 (1997). However, the Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." Id. at 995. The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally

14

does not constitute 'cruel and unusual punishment'." United States v. Organek, 65 F.3d 60, 62-63 (6th Cir. 1995).

Under Michigan law, the maximum sentence for habitual offender, fourth offense, is life imprisonment. Mich. Comp. Laws § 769.12. Petitioner was sentenced to twenty to thirty years imprisonment. In rendering its sentence, the trial court noted that Petitioner had a long criminal history which "implied a resistance to rehabilitation and made incarceration necessary." Covington, slip op. at 7. The trial court also considered the circumstances of Petitioner's crime. Id. Given that Petitioner's sentence was less than the statutory maximum and that Petitioner had an extensive criminal history, this Court finds that Petitioner's sentence does not offend the Eighth Amendment and he is therefore not entitled to habeas corpus relief with respect to this claim.

### F. Notice of Habitual Offender Charge

Petitioner claims that his habitual offender fourth conviction violates due process because he did not receive adequate notice of the habitual offender enhancement.

Due process does not require that a defendant receive notice of a habitual offender charge prior to trial on the substantive offense. Oyler v. Boles, 368 U.S. 448, 504 (1962). However, a defendant must receive "reasonable notice" and "an opportunity to be heard." Id. Where a defendant is informed of a recidivist charge and does not contest its validity, the defendant may not in a later habeas corpus proceeding maintain that he or she was not advised of or afforded an opportunity to contest that charge. Id. at 504-05.

In this case, in denying Petitioner's motion for relief from judgment, the trial court

held that the prosecutor properly and timely filed a Fourth Offense Notice stating that Petitioner was subject to the penalties provided in the habitual offender statute, Mich. Comp. Laws § 769.13. Petitioner has failed to show that the state court's factual finding was incorrect or clearly erroneous. Therefore, Petitioner's claim that he was denied due process is meritless.

### G. Alleged Ineffective Assistance of Counsel

Finally, Petitioner claims that he is entitled to habeas corpus relief because he received ineffective assistance of trial and appellate counsel. Specifically, Petitioner claims that his trial attorney was ineffective in failing to object to the admission of prior bad acts evidence and failing to object to Petitioner being sentenced as a fourth habitual offender where the habitual offender notice was not timely filed. Petitioner claims that his appellate attorney was also ineffective in failing to raise an ineffective assistance of trial counsel claim on appeal.

The Court addressed Petitioner's claim that his trial attorney was ineffective in failing to object to the admission of prior bad acts testimony *supra*. The trial court found that the fourth habitual offender notice was timely and properly filed. Petitioner has not shown that this holding was incorrect. Therefore, he cannot show that his trial attorney was ineffective in failing to object to a properly filed notice.

Finally, Petitioner cannot show that his appellate attorney was ineffective in failing to raise meritless claims on appeal. Therefore, habeas relief shall be denied.

### IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

                              s/Gerald E. Rosen
                              Gerald E. Rosen
                              United States District Judge

Dated: November 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2005, by electronic and/or ordinary mail.

                              s/LaShawn R. Saulsberry
                              Case Manager